LEONARD ALDRIDGE,

*vs.*

FRANCO-WYOMING SECURITIES CORPORATION, a corporation of the State of Delaware, WILLIAM D. WALTMAN, DAVID B. TRAMMELL, LESTER S. GRANT, and HERMAN S. BRISCOE.

*New Castle, May 27, 1942.*

*Ivan Culbertson,* and *Richard J. Cronan,* of New York City, for petitioner.

*Clarence A. Southerland,* of the firm of Southerland, Berl & Potter, for respondent Franco-Wyoming Securities Corporation.

THE VICE-CHANCELLOR: The question is whether Securities Corporation should be enjoined, pending the determination of the validity of the election of its present directors, from voting shares of stock of Oil Company which it holds and which constitute more than a majority of the voting stock of Oil Company. From the standpoint of procedure, the motion for injunction is subject to serious objection. The petition is the pleading which initiated the proceeding and defined the cause of complaint. In it, no case for an injunction is made out. Not only are there no allegations of the facts relating to the stock, the voting of which is sought to be enjoined, no allegations showing the necessity for an injunction, but also a preliminary injunction is not

specifically prayed for as required by *Rule* 97 *of the Court of Chancery..*

Wholly apart from any irregularities of a formal nature, there are other determinative reasons why the motion should be denied. The application for an injunction is predicated upon petitioner's contention that the directors of Securities Corporation were illegally elected at the meeting of its stockholders on March 3, 1942; and that hence, officers chosen by those directors should not be permitted to vote on behalf of Securities Corporation the stock of Oil Company which it holds. The asserted invalidity of the election is, in turn, based essentially upon the proposition that the voting of certain proxies for 300 shares of the capital stock of Securities Corporation (out of a total of 500 outstanding) at the meeting of March 3, was wrongful, in that it was in violation of *Sections* 2 *and* 3 *of the Trading with the Enemy Act,* 40 *Stat.* 411, 412, 50 *U. S. C. A. Appendix* §§ 2, 3. The 300 shares of stock were the aggregate holdings of six Frenchmen who, I shall assume without deciding, were residents of occupied France. Some time prior to the outbreak of hostilities between the United States and Germany on December 11, 1941, these gentlemen executed proxies authorizing the voting of their shares at annual or any other meetings of stockholders of Securities Corporation to be held during 1941, 1942, 1943 and 1944. These proxies were sent by mail from places in France which were not occupied by German military forces. They were addressed to William D. Waltman, the president of the corporation at Los Angeles, California. Waltman received the proxies before December 11, 1941. He voted them at the meeting of March 3.

The question whether the proxies were invalidated upon the outbreak of hostilities is an important one. The sections of the statute referred to do not furnish a specific answer. The solicitor for the Securities Corporation has cited cases including *Williams v. Paine,* 169 *U. S.* 55, 18 *S. Ct.* 279, 42 *L. Ed.* 458, and *Monsseaux v. Urquhart,* 19

*La. Ann.* 482, in support of his position that the proxies were not invalidated. From these authorities, and from the cursory examination of the law which the limited time has permitted, it seems to me that the question is not free from doubt, but that its determination may have such serious consequences that it should better be passed upon at final hearing when there will be afforded an opportunity for careful and deliberate consideration of the statute and pertinent authorities.

However, it is unnecessary at the present stage to decide this question, for petitioner has failed to sustain his burden of showing that there is a reasonable probability that irreparable injury will result from the act sought to be enjoined, namely, the voting of the shares of stock of Oil Company. There is no circumstance which casts the slightest suspicion that the voting of the shares will be impelled or influenced, directly or indirectly, by anyone acting for the promotion of the interests of Germany or to the prejudice of the United States, or that there will be any consequent benefit to Germany, or detriment to the United States. In an affidavit filed on behalf of petitioner, it is averred that "grave and irremediable damage and prejudice will result to" petitioner, who is also a stockholder of Oil Company, unless the voting of the shares be enjoined; further, that "there is a danger that a board of directors will be elected at the meeting of the said Franco Wyoming Oil Company fixed for the twenty-ninth day of May, which will not properly represent the interests of the stockholders of that company, and that a serious and irremediable wrong and prejudice will result to the plaintiff herein." But in the face of facts which properly appear, these bald averments are insufficient to establish impending irreparable injury.

Waltman, as president, and one Briscoe, as assistant secretary of Securities Corporation, have for many years voted the shares of stock of Oil Company held by Securities Corporation. Waltman has long been associated with both

companies. It was he who, at the meeting of stockholders of Securities Corporation on March 3, voted the proxies for the 300 shares owned by the six Frenchmen previously mentioned. His first connection with the Oil Company was in 1912. His familiarity with its affairs is not disputed. Nor is any charge made that during his past association with the two corporations he has acted improperly, or pre-judicially to the interests of the shareholders of either. In an affidavit filed herein, he states the intention of himself and of Briscoe with respect to voting at the proposed meeting of May 29, and the consequences of failure to elect new directors of Oil Company, as follows:

"It is the intention of myself as President of Franco Wyoming Securities Corporation and of Herman S. Briscoe as Secretary of Franco Wyoming Securities Corporation to cast the vote of Franco Wyoming Securities Corporation at said annual meeting of stockholders in favor of the election of ten citizens of the United States who have had an association of many years with Franco Wyoming Oil Company, who know its history and who are acquainted with its work.

"A failure to elect a new Board of Directors of Franco Wyoming Oil Company as soon as possible will leave in office the present Board composed of ten persons, Mr. L. S. Grant and myself as the only resident Americans, and eight highly capable and reputable residents of France (occupied or unoccupied) who have long been connected with Franco Wyoming Oil Company but whom, at the present time, it would be to the Company's benefit to displace with American citizens equally acquainted with the Company's affairs."

Petitioner has indicated no reason why this statement should be disregarded. Hence, it seems to me that the facts presently appearing do not warrant the conclusion that Securities Corporation will vote the Oil Company stock to elect directors who will not properly represent the interests of Oil Company's stockholders. The motion for an injunction must, therefore, be denied.

An order accordingly will be advised.